UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |  |
|---|---|---|
| | x | |
| In re | : | |
| | : | Chapter 11 |
| **MLLH REALTY CORP.,** | : | Case No. 09-14931 (MG) |
| | : | |
| Debtor. | : | |
| | : | |
| | x | |

# FIRST AMENDED PLAN OF REORGANIZATION OF MLLH REALTY CORP., AS MODIFIED

ROBINSON BROG LEINWAND GREENE
 GENOVESE & GLUCK P.C.
Attorneys for the Debtor
875 Third Avenue, 9th Fl.
New York, New York 10022
(212) 603-6300

Dated:  New York, New York
        July 22, 2010

MLLH Realty Corp. (the "Debtor"), hereby proposes the following first amended plan of reorganization (the "Plan") for the Debtor's chapter 11 case pursuant to sections 1121(a), 1122 and 1123 of title 11 of the United States Code.

## ARTICLE 1

### DEFINITIONS

Unless the context otherwise requires (i) the following terms shall have the following meanings when used in this Plan; (ii) any capitalized term that is used in this Plan and not defined in this Article 1 but that is defined in the Bankruptcy Code or the Bankruptcy Rules shall have the meaning set forth therein; (iii) terms stated in the singular shall include the plural and vice versa; (iv) pronouns stated in the masculine, feminine or neuter gender shall include the masculine, the feminine and the neuter; (v) all section, article and exhibit references in the Plan are to the respective section of, article of or exhibit to the Plan; (vi) any reference to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions, means that such document shall be substantially in such form or substantially on such terms and conditions; (vii) any reference to an existing document or exhibit filed or to be filed means such document or exhibit, as it may have been or may be amended, modified or supplemented; (viii) the words "herein", "hereof", "hereto" or "hereunder" and other words of similar import refer to the Plan in its entirety rather than to only a particular portion of the Plan; (ix) the rules of construction set forth in section 102 of the Bankruptcy Code shall govern construction of the Plan; and (x) any reference contained herein to the Bankruptcy Code, or to any section of the Bankruptcy Code, refers to the Bankruptcy Code, or such section of the Bankruptcy Code, as it is existing and effective on the Petition Date, except to the extent, if any,

that any post-Petition Date amendment to the Bankruptcy Code applies retroactively to cases filed on the Petition Date. Words used but not defined herein shall have the meaning ascribed to such terms in the Disclosure Statement for Plan of Reorganization dated July 22, 2010.

1.1 "**Administrative Bar Date**" means the earlier of the first Business Day that is at least 60 days after the Effective Date or a date fixed by Order of this Court.

1.2 "**Administrative Claim**" means a Claim for, or request for payment of, an Administrative Expense (i) as to which no objection to the allowance thereof has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules, or the Bankruptcy Court, or (ii) as to which any objection has been resolved by a Final Order to the extent such objection has been resolved in favor of the holder of such Claim, and (iii) which is not an Insured Claim.

1.3 "**Administrative Expense**" means any cost or expense of administration of this Case, other than Bankruptcy Fees, allowable under sections 503(b), 330 or 331 of the Bankruptcy Code.

1.4 "**Allowed Claim**" means a Claim against the Debtor that (a) has not been disallowed pursuant to a Final Order and is not a Disputed Claim and (i) with respect to which a Proof of Claim has been timely filed with the clerk of the Bankruptcy Court or, (ii) if no Proof of Claim has been filed, that has been or hereafter is listed by the Debtor in its Schedules as liquidated in amount and not disputed or contingent.

1.5 "**Allowed Interest**" means an Interest in the Debtor that has not been disallowed and is not a Disputed Interest (i) with respect to which a Proof of Interest has been

timely filed or, (ii) if no Proof of Interest has been filed, that has been or hereafter is listed by the Debtor in the Schedules as liquidated in amount and not disputed or contingent.

       1.6     "**Bankruptcy Code**" means title 11 of the United States Code, as amended from time to time and effective as to cases filed on the Petition Date.

       1.7     "**Bankruptcy Court**" means the United States Bankruptcy Court for the Southern District of New York or the United States District Court for the Southern District of New York to the extent it withdraws the reference over all or any portion of this Case pursuant to section 157(d) of title 28 of the United States Code.

       1.8     "**Bankruptcy Fees**" mean all fees and charges assessed against the estate under section 1930 of title 28 of the United States Code.

       1.9     "**Bankruptcy Rules**" mean (i) the Federal Rules of Bankruptcy Procedure, and (ii) the Local Bankruptcy Rules for the United States Bankruptcy Court for the Southern District of New York, in either case, as now in effect or hereinafter amended.

       1.10     "**Bar Date**" means February 9, 2010, the date fixed by Order of the Bankruptcy Court, subsequent to which a Proof of Claim or Proof of Interest may not be timely filed.

       1.11     "**Business Day**" means any day other than a Saturday, Sunday, or other day on which commercial banks in New York, New York are authorized or required by law to close, or other Legal Holiday.

       1.12     "**Case**" means the case under chapter 11 of the Bankruptcy Code commenced by the Debtor in the Bankruptcy Court on the Petition Date and styled *In re: MLLH Realty Corp.*, Case No. 09-14931(MG).

{00483468.DOC;4 }

1.13    "**Cash**" means lawful currency of the United States of America.

1.14    "**Claim**" means (a) a right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured or unsecured; or (b) a right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured or unsecured.

1.15    "**Class**" means a category of substantially similar Allowed Claims or Allowed Interests.

1.16    "**Closing Date**" means the date of the closing of the Exit Financing.

1.17    "**Confirmation**" means the entry of the Confirmation Order.

1.18    "**Confirmation Date**" means the date on which the Confirmation Order is entered by the Bankruptcy Court, provided that the Confirmation Order becomes a Final Order.

1.19    "**Confirmation Order**" means an Order confirming the Plan pursuant to section 1129 of the Bankruptcy Code.

1.20    "**Creditor**" means a holder of an Allowed Claim.

1.21    "**Cure Amount**" means any amount required, pursuant to Sections 365(b)(1)(A) and 365(b)(1)(B) of the Bankruptcy Code, to cure any defaults or compensate the non-debtor party to an Executory Contract or Unexpired Lease for any actual pecuniary loss resulting from a default in respect of an Executory Contract or Unexpired Lease.

1.22    "**Debtor**" means MLLH Realty Corp.

{00483468.DOC;4 }

1.23 **"Debtors"** means MLLH Realty Corp., and its affiliates, Park Avenue Radiologists, P.C. and Imaging Services Company of NY, LLC.

1.24 "**Disbursing Agent**" means the entity designated by this Plan and charged with the responsibility of making the payments necessary under the Plan.

1.25 "**Disclosure Statement**" means the *Disclosure Statement for Plan of Reorganization for MLLH Realty Corp.*, including all exhibits, attachments or amendments thereto, approved by Order of the Bankruptcy Court.

1.26 "**Disputed Claim**" means (a) any claim that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Claim has been filed; (b) a Claim that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order. Until the earlier of (i) the filing of an objection to a Proof of Claim or (ii) the last date to file objections to Claims as established by the Plan or by Final Order, a Claim shall be deemed to be a Disputed Claim in its entirety if, (A) the amount specified in the Proof of Claim exceeds the amount of any corresponding Claim listed in the Schedules; (B) any corresponding Claim listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (C) no corresponding Claim has been listed in the Schedules.

1.27 "**Disputed Claim Reserve**" means the segregated account or accounts established by the Disbursing Agent pursuant to section 7.7 of the Plan.

1.28　　**"Disputed Interest"** means (a) any Interest that is listed in the Schedules as disputed, contingent or unliquidated and with respect to which no Proof of Interest has been filed, (b) an Interest in the Debtor that has not been disallowed and with respect to which an objection to the allowance thereof, in whole or in part, has been interposed within the applicable period of limitation fixed by the Plan, the Bankruptcy Code, the Bankruptcy Rules or the Bankruptcy Court, to the extent that any such objection has not been resolved by a Final Order.  Until the earlier of (i) the filing of an objection to a Proof of Interest or (ii) the last date to file objections to Interests as established by the Plan or by Final Order, an Interest shall be deemed to be a Disputed Interest in its entirety if, (A) the amount specified in the Proof of Interest exceeds the amount of any corresponding Interest listed in the Schedules; (B) any corresponding Interest listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (C) no corresponding Interest has been listed in the Schedules.

1.29　　**"Effective Date"** means the 30th day after the Closing Date.

1.30　　**"Estate"** means the estate created on the Petition Date pursuant to section 541 of the Bankruptcy Code.

1.31　　**"Exhibit Filing Date"** means a date by which all exhibits to this Plan must be filed with the Court which shall be no later than ten (10) days prior to the commencement of the hearing on the adequacy of the information contained in the Debtor's Disclosure Statement.

1.32　　**"Executory Contract"** means an executory contract within the meaning of Section 365 of the Bankruptcy Code.

1.33    **"Exit Financing**" means the Sterling Loan or such other loan or financing arrangement the Debtor may obtain.

1.34    **"Final Order**" means a judgment, order, ruling or other decree issued and entered by the Bankruptcy Court or by any state or other federal court or other tribunal located in one of the states, territories or possessions of the United States or the District of Columbia, that has not been stayed or that is no longer subject to appeal, *certiorari* proceeding or other proceeding for review or rehearing, and as to which no appeal, *certiorari* proceeding, or other proceeding for review or rehearing shall then be pending.

1.35    **"Governmental Unit"** means the United States; state; commonwealth; district; territory; municipality; foreign state; department, agency, or instrumentality of the United States (but not a United States trustee while serving as a trustee in a case under this title), a state, a commonwealth, a district, a territory, a municipality, or a foreign state; or other foreign or domestic government.

1.36    **"Imaging"** means Imaging Services Company of NY, LLC, an affiliate of MLLH and a debtor in the bankruptcy proceeding captioned: Imaging Services Company of NY, LLC, Case No. 09-14930 (MG).

1.37     **"Insider"** means an insider of the Debtor as determined in accordance with section 101(31) of the Bankruptcy Code.

1.38    **"Insider Claim"** means an Allowed Claim held by or behalf of an Insider or any successor in interest or assignee thereof.

1.39    "**Insurance Policy**" means (i) any policy or policies of insurance, naming the Debtor as an insured or as an additional named insured, or issued for the benefit of

the Debtor pursuant to any lease or indemnification agreement, pursuant to which an Insurer is obligated to satisfy an Insured Claim in whole or in part, and (ii) any right of indemnification that the Debtor has received, in whole or in part, from any third party, pursuant to which an Insurer is obligated to satisfy an Insured Claim in whole or in part.

1.40 **"Insured Claim"** means any Allowed Claim or portion thereof that, pursuant to the terms of an Insurance Policy or Policies or indemnification agreement, an Insurer is contractually obligated to pay, all or any portion thereof, on account of bodily injury, workers' compensation, property damage or other losses within the limits of the Insurance Policy or Policies or indemnification agreement issued by such Insurer.

1.41 **"Insurer"** means any entity that has issued an Insurance Policy or indemnification agreement contractually obligating itself to pay, all or any portion thereof, on account of personal injury, workers' compensation, property damage or other losses, within the limits of the Insurance Policy or Policies or indemnification agreement issued by such Insurer.

1.42 "**Interest**" means an interest in the Debtor represented by an Equity Security interest.

1.43 "**Interest Holder**" means a holder of an Allowed Interest in the Debtor.

1.44 **"JPMorgan Secured Claim"** means the secured portion of the claim filed by JPMorgan Chase Bank, N.A.

1.45 "**Legal Holiday**" means a Legal Holiday as that term is defined in Bankruptcy Rule 9006(a).

1.46 **"MLLH Realty Corp."** means the Debtor in this case.

1.47 "**Order**" means an order of the Bankruptcy Court.

1.48    **"Park"** means Park Avenue Radiologists, P.C., an affiliate of MLLH and Imaging and a debtor in the bankruptcy proceeding captioned: Park Avenue Radiologists, P.C., Case No. 09-14929 (MG).

1.49    "**Petition Date**" means August 11, 2009, the date on which the Case was commenced by the Debtor by the filing of a voluntary petition for relief under chapter 11 of the Bankruptcy Code.

1.50    "**Plan**" means this *Plan of Reorganization for MLLH Realty Corp.* as it may be amended, supplemented or modified from time to time, including any exhibits or schedules annexed hereto or required to be filed with the Bankruptcy Court pursuant hereto.

1.51    **"Post-Petition Interest"** means with respect to:

> (i) Secured Claims, interest accruing from the Petition Date through the Effective Date at the rate set forth in the contract or other applicable document giving rise to such claims (to the extent lawful) or, if the applicable instrument does not specify a rate of interest, at the Federal Judgment Rate;

> (ii) Priority Tax Claims, interest accruing from the Petition Date through the Effective Date (a) with respect to federal taxes, at a fixed annual rate equal to the federal statutory rate as provided in 26 U.S.C. § 6621, and (ii) with respect to state and local taxes, at the Prime Rate of interest as in effect for the period to which the Priority Tax Claim pertains, or (iii) in either case, as otherwise agreed to by the holder of such Priority Tax Claim and the Debtor; and

> (iii) Priority Claims and Unsecured Claims, interest accruing from the Petition Date through the Effective Date at the Federal Judgment Rate.

1.52    **"Post-Petition Tax Claim"** means an Allowed Claim of a Governmental Unit for taxes (or for interest or penalties related to such taxes) for any tax year or

period, all or any portion of which occurs or falls within the period from and including the Petition Date through and including the Effective Date.

1.53　　"**Priority Claim**" means an Allowed Claim, other than a Priority Tax Claim, an Administrative Claim, Bankruptcy Fees or an Employee Benefit Claim, to the extent entitled to priority under section 507 of the Bankruptcy Code.

1.54　　"**Priority Tax Claim**" means an Allowed Claim of a Governmental Unit of the kind specified in section 507(a)(8) of the Bankruptcy Code.

1.55　　"**Proceeds**" means the cash proceeds received by the Debtor from the Exit Financing.

1.56　　"**Professional**" means any professionals employed by the Debtor under section 327 of the Bankruptcy Code.

1.57　　"**Professionals' Fees**" means compensation for services rendered, and reimbursement of expenses incurred by Professionals as awarded by Final Order following application in accordance with Sections 330 and 331 of the Bankruptcy Code.

1.58　　"**Proof of Administrative Claim**" means a request for payment of an Administrative Expense (including fees and expenses allowed under sections 330 or 331 of the Bankruptcy Code of duly retained professionals providing services in this Case) filed pursuant to section 503 of the Bankruptcy Code.

1.59　　"**Proof of Claim**" means a proof of Claim filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.60　　"**Proof of Interest**" means a proof of an Interest filed pursuant to section 501 of the Bankruptcy Code and Part III of the Bankruptcy Rules.

1.61 **"Property"** means the real property and improvements located at 525 Park Avenue, New York, New York Units S, D, LL and N.

1.62 **"Pro Rata"** means the proportion an Allowed Claim or an Allowed Interest in a particular Class bears to the aggregate amount of all Allowed Claims or Allowed Interests in such Class.

1.63 **"Released Entities"** means individually and collectively, the Debtor, its Creditors and Interest Holders.

1.64 **"Reorganized Debtor"** means the Debtor on and after the Effective Date.

1.65 **"Schedules"** mean the schedules of assets and liabilities and statement of financial affairs filed by the Debtor with the Bankruptcy Court in accordance with section 521(1) of the Bankruptcy Code and Rule 1007 of the Bankruptcy Rules and any amendments thereto.

1.66 **"Secured Claim"** means an Allowed Claim, including all amounts, if any, allowed pursuant to section 506(b) of the Bankruptcy Code, to the extent that it is secured by a lien on property in which the Estate has an interest or that is subject to set-off under section 553 of the Bankruptcy Code, to the extent of the value of the Claim holder's interest in the Estate's interest in such property or to the extent of the amount subject to set-off, as applicable, as determined pursuant to section 506(a) of the Bankruptcy Code.

1.67 **"Secured Tax Claim"** means a Secured Claim for taxes or assessments held by a Governmental Unit, to the extent, if any, that such taxes and assessments are entitled to

a security interest under applicable non-bankruptcy law, and shall not include any non-tax Claims held by the City of New York.

1.68 **"Sterling"** means Sterling National Bank

1.69 **"Sterling Loan"** means the financing arrangement with Sterling consisting of a first mortgage loan of $8,500,000 and a revolving line of credit of $1,500,000.

1.70 **"Transfer Taxes"** means, without limitation, (i) New York City Real Property Transfer Taxes imposed under chapter 21 of title 11 of the New York City Administrative Code, (ii) New York Real Estate Transfer Taxes imposed under article 31 of the New York State Tax Law, (iii) New York City Mortgage Recording Taxes imposed under chapter 26 of title 11 of the New York City Administrative Code, (iv) New York State Mortgage Recording Taxes imposed under article 11 of the New York State Tax Law, and (v) and any and all other stamp taxes or similar taxes which, but for the applicability of section 1146 of the Bankruptcy Code would be applicable, to any transfer made in accordance with, pursuant to, or in furtherance of, the Plan.

1.71 **"Unexpired Lease"** means an unexpired lease within the meaning of Section 365 of the Bankruptcy Code.

1.72 "**Unsecured Claim**" means an Allowed Claim, including a Deficiency Claim that is not an Administrative Claim, a Bankruptcy Fee, an Insider Claim, an Insured Claim, a Priority Claim, a Priority Tax Claim, an Other Secured Claim, a Secured Claim or a Secured Tax Claim.

**ARTICLE 2**

**TREATMENT OF UNCLASSIFIED CLAIMS**

Pursuant to section 1123(a)(1) of the Bankruptcy Code, the Plan does not classify Administrative Claims or Allowed Priority Tax Claims.  Such Claims, to the extent Allowed, shall receive the treatment provided in this Article 2 in full satisfaction, release and discharge thereof.

2.1     **Administrative Bar Date**.  Except as otherwise provided in sections 2.2 and 2.3 of the Plan, requests for payment of and/or Proofs of Administrative Claims must be filed no later than the Administrative Bar Date.  Holders of Administrative Claims that do not file Proofs of Administrative Claims on or before the Administrative Bar Date shall be forever barred from asserting such Claims against the Reorganized Debtor or its property; provided, however, that Holders of Claims for Administrative Expenses arising in the ordinary course of the Debtor's business need not file Administrative Claims.

2.2     **Professionals' Compensation and Reimbursement**.  All Professionals shall file final applications for approval of compensation and reimbursement of reasonable and necessary expenses pursuant to section 330 of the Bankruptcy Code no later than the Administrative Bar Date.  Any such application timely filed shall be deemed to be a Proof of Administrative Claim.  No later than three days prior to the Effective Date, each such Professional shall provide the Disbursing Agent with an estimate of the total amount of compensation and expenses for which such Professional expects to seek final compensation pursuant to section 330 of the Bankruptcy Code.  Such estimates shall include estimated sums for the preparation and prosecution of any such application.  Unless otherwise agreed by such claim holder in writing, on the Effective Date the Disbursing Agent shall segregate sufficient cash to pay all such estimated compensation and

expenses in full.  Objections to any Professional's application for compensation or reimbursement must be filed and served upon such Professional, and the Disbursing Agent, no later than 90 days after the Effective Date.  Any such objection not timely filed and served shall be deemed to have been waived.

       2.3    **Post-Petition Tax Claims**.  All Proofs of Administrative Claims for Post-Petition Tax Claims for which no bar date has otherwise previously been established, must be filed on or before the later of (i) 60 days following the Effective Date; and (ii) 120 days following the filing of the tax return for such taxes for such tax year or period with the applicable Governmental Unit. Any holder of any Post-Petition Tax Claim that does not file a Proof of Administrative Claim by the applicable bar date shall be forever barred from asserting any such Post-Petition Tax Claim against the Reorganized Debtor or its property, whether any such Post-Petition Tax Claim is deemed to arise prior to, on, or subsequent to the Effective Date.

       2.4    **Administrative Claims**.  Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, each Administrative Claim, to the extent not previously paid, shall be paid by the Disbursing Agent in Cash in full on (i) the later of the Effective Date, the date payment of such Claim is due under the terms thereof or applicable law, or three business days after such Claim becomes an Administrative Claim or (ii) as may be otherwise mutually agreed in writing between the Disbursing Agent and the holder of such Claim; *provided, however,* that any Administrative Claim incurred by the Debtor in the ordinary course of its business shall be paid in full in accordance with the terms and conditions of the particular transaction giving rise to such Administrative Claim and any agreements relating thereto.

2.5    **Priority Tax Claims.**  (a) Subject to the provisions of Article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Priority Tax Claims, and except as may be otherwise mutually agreed in writing between the Debtor and such Governmental Units, all Priority Tax Claims shall be paid by the Disbursing Agent in Cash in full on the Effective Date.

2.6    **Bankruptcy Fees.**  All fees and charges assessed against the Debtor under section 1930 of title 28 of the United States Code shall be paid by the Disbursing Agent in Cash in full as required by statute. Subsequent to the Effective Date, all fees and charges assessed against the Debtor or its Estate under Section 1930 of title 28 of the United States Code shall be paid in Cash in full, as and when due, by the Debtor, through entry of the final decree closing this case.

## ARTICLE 3

### CLASSIFICATION OF CLAIMS AND INTERESTS

Except as otherwise provided in Article 2, Allowed Claims and Allowed Interests are classified as set forth in this Article 3.  A Claim or Interest is in a particular Class designated herein only to the extent such Claim or Interest (i) fits within the description of such Class and is in such other and different Class or Classes to the extent that the remainder thereof fits within the description of such other Class or Classes and (ii) has not been paid, released or otherwise satisfied prior to the Effective Date.

3.1    **Class 1 - Priority Claims.**  Class 1 consists of all Priority Claims.

3.2     **Class 2 – JPMorgan Secured Claim**[1]**.**  Class 2 consists of the Claim held by

JPMorgan to the extent such claim constitutes a Secured Claim in accordance with section 506(a) of

the Bankruptcy Code.

3.3     **Class 3 - Unsecured Claims.**  Class 3 consists of all Unsecured Claims.

3.5     **Class 4 –Equity Interests**. Class 4 consists of the equity interests in the

Debtor.

ARTICLE 4

TREATMENT OF UNIMPAIRED CLAIMS AND INTERESTS

Allowed Claims in Classes 1, 2 and 3 and Allowed Interests in Class 4 are not

impaired.  Allowed Claims in Classes 1, 2 and 3 and Allowed Interests in Class 4 shall receive the

following treatment under the Plan in full settlement, release and discharge thereof.

4.1     **Class 1 - Priority Claims.**     Subject to the provisions of article 7 of the Plan

with respect to Disputed Claims, in full satisfaction, release and discharge of Priority Claims, each

holder of a Priority Claim shall receive on the Effective Date, Cash, in the full amount of its

Allowed Priority Claim plus Post-Petition Interest.

4.2     **Class 2 – JPMorgan Secured Claim.**  Subject to the provisions of article 7

of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of the

JPMorgan Secured Claim, JPMorgan shall receive payment in the full amount of its Allowed

Secured Claim on the Effective Date plus Post-Petition Interest.

---

1       JPMorgan has filed a claim in the amount of $1,540,514.59 which claim  on its face is designated as secured in the amount of $1,449,194.44.  The attachment to the claim acknowledges that $650,000 of the aggregate amount of the filed claim  is not secured on the Debtor's property. The unsecured portion of the JPMorgan claim will be treated as a Class 3 General Unsecured Claim.  The unsecured portion of the JPMorgan claim is based upon a term promissory note in the amount of $706,694.44, comprised of (i) the principal amount of $650,000 plus (ii) pre-
{00483468.DOC;4 }

17

4.3 **Class 3 – Unsecured Claims**. Subject to the provisions of article 7 of the Plan with respect to Disputed Claims, in full satisfaction, release and discharge of Class 3 Unsecured Claims, each holder of a Class 3 Unsecured Claim shall receive on the Effective Date Cash in the full amount of its Allowed Unsecured Claim plus Post-Petition Interest.

4.5 **Class 4 - Equity Interests**. Upon the Effective Date, MLLH shall redeem the equity interests of Dr. Gary Halpern and Dr. Albert Messina in exchange for cash consideration of $2,450,000 each and Marc Liebeskind shall be the beneficial 100% shareholder of the Reorganized Debtor.

---

petition accrued interest in the amount of $56,694.44.

{00483468.DOC;4 }

## ARTICLE 5

### TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES

5.1 **Rejection of Executory Contracts and Unexpired Leases.** Effective on and as of the Effective Date, any and all Executory Contracts and Unexpired Leases to which the Debtor is a party which (i) have not expired or terminated pursuant to their own terms, or (ii) have not previously been assumed, or assumed and assigned or rejected pursuant to an order of the Bankruptcy Court on or prior to the Confirmation Date, or (iii) are not the subject of pending motions to assume or reject as of the Confirmation Date or (iv) are not specified in the list of Executory Contracts and Unexpired Leases to be assumed pursuant to the Plan are hereby specifically rejected. The lease between MLLH and Imaging Services Company of NY is expressly assumed.

5.2 **Treatment of Rejection Claims.** Allowed Claims arising out of the rejection of an Executory Contract or Unexpired Lease pursuant to the Plan (as opposed to a separate order of the Bankruptcy Court) shall, pursuant to Section 502(g) of the Bankruptcy Code, be treated as Unsecured Claims. A Proof of Claim with respect to any Unsecured Claim for damages arising from the rejection of an Executory Contract of Unexpired Lease pursuant to the Plan shall be filed no later than the 10th date after the Confirmation Date. The Reorganized Debtor shall have thirty (30) days after the Confirmation Date to object to any such rejection Claims filed in accordance with this section 5.2.

5.3 **Assumption Cure Payments.** Except as otherwise agreed to by the parties, on the Effective Date, the Reorganized Debtor shall cure any and all undisputed defaults under any

Executory Contract or Unexpired Lease that is assumed pursuant to the Plan in accordance with Section 365 of the Bankruptcy Code. Unless the parties to the contract or lease agree otherwise, all disputed defaults that are required to be cured shall be cured by the later to occur of (i) ten (10) days after the entry of a Final Order determining the amount, if any, of the Reorganized Debtor's liability with respect thereto and (ii) the Effective Date.

## ARTICLE 6

### IMPLEMENTATION OF THE PLAN

6.1 **Implementation.** The Debtor shall take all necessary steps, and perform all necessary acts, to consummate the terms and conditions of the Plan. The Confirmation Order shall contain appropriate provisions, consistent with section 1142 of the Bankruptcy Code, directing the Debtor, the Reorganized Debtor, and any other necessary party to execute or deliver or to join in the execution or delivery of any instrument required to effect a transfer of property required by the Plan and to perform any act, including the satisfaction of any lien, that is necessary for the consummation of the Plan. The Closing Date shall occur as soon as practicable after the Confirmation Date and thereafter, the Disbursing Agent shall distribute the Proceeds pursuant to the provisions of this Plan on the Effective Date.

6.2 **Post-Confirmation Management and Compensation.** The Debtor will continue in existence post-confirmation as the Reorganized Debtor.

6.3 **Revesting of Assets.** Subject to the Exit Financing, on the Closing Date, the Property shall vest in the Reorganized Debtor free and clear of all liens, Claims and encumbrances. As of the Closing Date, all liens, claims and encumbrances that have not been expressly preserved under the Plan shall be deemed extinguished as of such date. Any other

{00483468.DOC;4 }

asset of the Debtor, including any surplus of the Proceeds after payment is made to all classes of creditors pursuant to the Plan shall vest in the Debtor free and clear of all Liens, Claims and encumbrances.

   6.4  **Funding.** Payments and distributions to be made under the Plan to the holders of Administrative Claims, Priority Claims, Priority Tax Claims, the JPMorgan Secured Claim, Bankruptcy Fees, Unsecured Claims, and redemption claims, shall be made by the Debtor from the Proceeds which shall be distributed to creditors as set forth in Article 4.

   6.5  **Transfer Taxes.** (a) Pursuant to section 1146 of the Bankruptcy Code, the issuance, transfer, or exchange of any security and the making or delivery of any instrument of transfer in connection with or in furtherance of the Plan (including, but not limited to, any instrument executed in furtherance of the transactions contemplated by the Plan including the refinancing of the Property and the filing of any Mortgage on the Property for the amounts of money paid pursuant to the terms of the Plan, the redemption of any shares by MLLH or any loans or advances made by MLLH to its affiliates) shall be exempt and shall not be subject to tax under any law imposing a stamp tax, real estate Transfer Tax, mortgage recording tax or similar tax, and, to the extent provided by section 1146 of the Bankruptcy Code, if any, shall not be subject to any state, local or federal law imposing sales tax; (b) Pursuant to Section 1142(b) of the Bankruptcy Code, the Confirmation Order shall direct the Register's Office to record any recordable document executed in connection with the consummation of the Plan, without the payment of Transfer Taxes.  The Office of the Register of the City of New York and any applicable Register's Office in the State of New York or its municipalities and counties shall

record any recordable document executed in connection therewith without the payment of any Transfer Taxes.

6.6 **Execution of Documents.** Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, the Debtor and the Disbursing Agent shall be authorized to execute, in the name of any necessary party, any notice of satisfaction, release or discharge of any lien, Claim or encumbrance (including any lien, Claim or encumbrance that is to be released and satisfied upon the Debtor's compliance with the provisions of Article 4 of the Plan) not expressly preserved in the Plan and deliver such notices to any and all federal, state and local governmental agencies or departments for filing and recordation, and the Confirmation Order shall expressly so provide.

6.7 **Filing of Documents.** Pursuant to sections 105, 1141(c) and 1142(b) of the Bankruptcy Code, each and every federal, state and local governmental agency or department, shall be directed to accept and record any and all documents and instruments necessary, useful or appropriate to effectuate, implement and consummate the transactions contemplated by the Plan, and any and all notices of satisfaction, release or discharge or assignment of any Lien, Claim or encumbrance not expressly preserved by the Plan.

6.8 **Preservation of Rights of Action.** Except as otherwise provided herein or in any contract, instrument, release or other agreement entered into in connection with the Plan, the Debtor shall retain, and on the Effective Date shall be deemed to have assigned to the Reorganized Debtor, and the Reorganized Debtor may enforce any claims, rights and causes of action arising under sections 510 and 544 through 550 of the Bankruptcy Code or any similar provisions of state law, or any statute or legal theory.

{00483468.DOC;4 }

{00483468.DOC:4 }

ARTICLE **7**

**PROVISIONS GOVERNING DISTRIBUTIONS**

7.1     **Disbursing Agent.**  U.S. Bank National Association shall act as the

Disbursing Agent and shall distribute all Cash or other property to be distributed under the Plan.

 The Disbursing Agent may employ or contract with other entities to assist in or perform the

distribution of the property to be distributed.  The Disbursing Agent shall be entitled to

compensation for services rendered under the Plan at its usual and customary fee and

reimbursement of all expenses incurred in the performance of its duties.  The Disbursing Agent

shall serve with a bond or shall be bonded.

7.2     **Timing of Distributions Under the Plan.**  Subject to section 7.6 of the

Plan, any payments, distributions or other performance to be made pursuant to the Plan on

account of any Claim or Interest shall be deemed to be timely made if made on or within five (5)

Business Days following the later of (i) the Effective Date or (ii) the expiration of any applicable

objection deadline with respect to such Claim or Interest or (iii) such other times provided in the

Plan.

7.3     **Method of Payment.**  Unless otherwise expressly agreed, in writing, all

Cash payments to be made pursuant to the Plan shall be made by check drawn on a domestic

bank.

7.4     **Objection Deadline.**  Unless otherwise ordered by the Bankruptcy Court,

objections to the allowance of any Claim or Interest filed may be filed no later than the later to

occur of (i) 90 days after the Effective Date or (ii) 90 days after the date such Proof of Claim or

Interest is filed. Until the earlier of (i) the filing of an objection to a Proof of Claim or Interest or (ii) the last date to file objections to Claims or Interests as established by the Plan or by Final Order, Claims or Interests shall be deemed to be Disputed in their entirety if, (i) the amount specified in a Proof of Claim or Interest exceeds the amount of any corresponding Claim or Interest listed in the Schedules; (ii) any corresponding Claim or Interest listed in the Schedules has been scheduled as disputed, contingent or unliquidated; or (iii) no corresponding Claim or Interest has been listed in the Schedules.

7.5 **Prosecution of Objections.** After the Confirmation Date, only the Debtor and the Disbursing Agent shall have authority to file, settle, compromise, withdraw or litigate to judgment objections to Disputed Claims. The Debtor and the Disbursing Agent shall have the right to litigate to judgment, settle or withdraw any objection to any Claim or Interest.

7.6 **No Distribution Pending Allowance.** Notwithstanding any other provision of the Plan, no payment or distribution of Cash or other property shall be made with respect to any portion of a Disputed Claim unless and until all objections to such Claim are resolved by Final Order.

7.7 **Escrow of Cash Distributions.** (a) Unless otherwise agreed to in writing by the Debtor and the holder of any Disputed Claim, on the Effective Date the Disbursing Agent shall deposit in one or more segregated accounts, Cash or property equal to 100% of the Cash or property to be distributed under the Plan on account of Disputed Claims that would be Allowed Claims but for the pendency of a dispute with respect thereto, including, but not limited to (i) Disputed Claims entitled to treatment as Administrative Expenses or as Priority Claims pursuant to sections 503 and 507 of the Bankruptcy Code, (ii) claims of Governmental Units for any tax,

(iii) any disputed Cure Amount, or (iv) any amount due but not payable on the Effective Date on account of Administrative Expenses or Claims entitled to priority pursuant to section 503 and 507 of the Bankruptcy Code. The Disbursing Agent shall also segregate any interest, dividends or proceeds of such Cash. Such Cash together with any interest, dividends or proceeds thereof, shall be held in trust for the benefit of the holders of all such Disputed Claims pending determination of their entitlement thereto.

(b) The Disbursing Agent shall have the right to seek an Order of the Bankruptcy Court, after notice and a hearing, estimating or limiting the amount of Cash or property that must be so deposited. Any Creditor whose Claim is so estimated shall have no recourse to any assets theretofore distributed on account of any Allowed Claim, or any other Entity or property if the Allowed Claim of that Creditor as determined by Final Order exceeds the amount so deposited. Instead, such Creditor shall have recourse only to the undistributed assets in the Disputed Claims reserve (on a Pro Rata basis with other Creditors of the same Class who are similarly situated) that exceed the aggregate amount of all Disputed Claims allowed by Final Order.

(c) To the extent any Allowed Claim and/or any Administrative Claim is otherwise not paid on the Effective Date, funds in an amount necessary to satisfy any such unpaid Allowed Claim and/or Administrative Claim shall be maintained in an escrow account for distribution thereafter.

7.8 **Distribution After Allowance.** Within 30 days after the allowance of a Disputed Claim, in the event any distributions have been made as of the date such Claim becomes an Allowed Claim, the Disbursing Agent shall distribute from the funds placed in

escrow in accordance with section 7.7 of this Plan, all Cash or other property, including any interest, dividends or proceeds thereof, to which a holder is then entitled with respect to any Disputed Claim that has become an Allowed Claim.

7.9 **Investment of Segregated Cash and Property.** To the extent practicable, the Disbursing Agent may invest any Cash or other property segregated on account of a Disputed Claim, Disputed Interest, undeliverable distribution, or any proceeds thereof (i) in a manner that will yield a reasonable net return taking into account the safety of the investment or (ii) in any manner permitted by section 345 of the Bankruptcy Code; *provided, however,* that the Disbursing Agent shall be under no obligation to so invest such Cash or proceeds and shall have no liability to any party for any investment made or any omission to invest such Cash, other property or proceeds.

7.10 **Distribution After Disallowance.** Subject to section 7.7 of the Plan, the Cash and other property segregated on account of Disputed Claims, including the allocable portion of the net return yielded from any investment thereof remaining after all Disputed Claims have been resolved by Final Order shall be returned to the Debtor.

7.11 **Delivery of Distributions.** Except as provided in sections 7.13 and 7.14 of the Plan, distributions to holders of Allowed Claims and Allowed Interests shall be made: (1) at the addresses set forth on the respective Proofs of Claim or Proofs of Interests Filed by such holders; (2) at the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim of Proof of Interest; or (3) at the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

{00483468.DOC;4 }

7.12    **Surrender of Instruments.**  (a)  Notwithstanding any other provision of the Plan, no Creditor or Interest Holder that holds a note or other instrument evidencing such Creditor's Claim or Interest may receive any distribution with respect to such Claim or Interest unless and until the original note or other original instrument evidencing such Claim or Interest shall have been validly surrendered to the Debtor or the Disbursing Agent at the sole cost and expense of such Creditor or Interest Holder.  In addition, at the election of the Debtor, a Creditor that holds a mortgage, security interest, assignment of rents or other such instrument shall execute and deliver to the Debtor an assignment or satisfaction of such mortgage, security interest, assignment of rents or other such instrument, in proper form for recording.  Any Cash or property to be distributed pursuant to the Plan on account of any such Claim shall, pending surrender, be treated as an undeliverable distribution pursuant to section 7.13 of the Plan.

(b)  In the event any Creditor or Interest Holder is unable to surrender a Note or other instrument evidencing a Claim against the Debtor that has been destroyed, lost or stolen, such Entity may receive a distribution with respect to such Claim by presenting to the Debtor or the Disbursing Agent, in a form acceptable to the Debtor:  (i) proof of such Entity's title to such Claim; (ii) proof of the loss, destruction, mutilation or theft of such Note or other instrument evidencing a Claim; (iii) an affidavit to the effect that the same has been lost and after diligent search cannot be located; and (iv) such indemnification as may be required by the Debtor or the Disbursing Agent and all other Entities deemed appropriate by the Debtor or the Disbursing Agent from any loss, action, suit or any claim whatsoever which may be made as a result of such Entity's receipt of a distribution under the Plan.

(c)  All questions as to the validity, form or eligibility of any Note or other instrument evidencing a Claim so surrendered shall be resolved by Final Order of the Bankruptcy Court.  Neither the Debtor nor the Disbursing Agent shall be under any duty to give notification of defects in such tender or shall incur liability for failure to give notification of such defects.  Any such Note or instrument received by the Debtor that is not properly tendered and to which the defects have not been cured or waived, will be returned by the Debtor to the tendering holder as soon as practicable.

7.13    **Undeliverable Distributions.**  (a) If the distribution to the holder of any Claim or Interest is returned to the Disbursing Agent as undeliverable, no further distribution shall be made to such holder unless and until the Disbursing Agent is notified in writing of such holder's then current address.  Undeliverable distributions shall remain in the possession of the Disbursing Agent until the earlier of (i) such time as a distribution becomes deliverable or (ii) such undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan.

(b) Until such time as an undeliverable distribution becomes an unclaimed distribution pursuant to section 7.14 of the Plan, semi-annually, following the Effective Date, the Disbursing Agent shall make distributions of all Cash and property that has become deliverable during the preceding six-month period.  Each such distribution shall include the net return yielded from the investment of any undeliverable Cash, from the date such distribution would have been due had it then been deliverable to the date that such distribution becomes deliverable.

(c) Nothing contained in the Plan shall require the Debtor or the Disbursing Agent to attempt to locate any holder or an Allowed Claim of an Allowed Interest.

7.14 **Unclaimed Distributions.** Any Cash or other property to be distributed under the Plan shall be retained by the Disbursing Agent if it is not claimed by the Entity entitled thereto before the later of (i) one hundred eighty (180) days after the Effective Date or (ii) 60 days after an Order allowing the Claim of that Entity becomes a Final Order.

7.15 **Surplus Funds**. Any surplus of the Proceeds after distributions are made in accordance with this Plan shall vest with the Reorganized Debtor.

7.15 **Set-offs.** The Disbursing Agent may, but shall not be required to set-off against the distributions to be made pursuant to the Plan, the claims, obligations, rights, causes of action and liabilities of any nature that the Debtor may hold against the holder of an Allowed Claim, *provided, however,* that neither the failure to effect such a set-off nor the allowance of any claim hereunder shall constitute a waiver or release by the Debtor or the Disbursing Agent of any such claims, obligations, rights, causes of action and liabilities that the Debtor or the Disbursing Agent has or may have against such holder.

## ARTICLE 8

### DISCHARGE AND RELEASES

8.1 **Discharge**. Intentionally omitted.

8.2. **Injunction.** Except (i) as otherwise provided under Final Order entered by the Bankruptcy Court or (ii) with respect to the Debtor's obligations under the Plan, the entry of the Confirmation Order shall forever stay, restrain and permanently enjoin with respect to any Claim or Interest held against the Debtor as of the date of entry of the Confirmation Order (i) the commencement or continuation of any action, the employment of process, or any act to collect, enforce, attach, recover or offset from the Property or from property of the Estate that has been

or is to be distributed under the Plan, and (ii) the creation, perfection or enforcement of any lien or encumbrance against the Property and any property of the Estate that has been or is to be, distributed under the Plan.  Except as otherwise provided in the Confirmation Order, the entry of the Confirmation Order shall constitute an injunction against the commencement or continuation of any action, the employment of process, or any act to collect, recover or offset from the Debtor, from the Property or from property of the Estate, any claim, any obligation or debt that was held by any person or entity as of the Confirmation Date except pursuant to the terms of this Plan. The entry of the Confirmation Order shall permanently enjoin all Creditors and holders of Interests, their successors and assigns, from enforcing or seeking to enforce any such Claims or Interests.

        8.3      **Limitation of Liability.**  Neither the Debtor, nor any of its respective officers, or employees (acting in such capacity) nor any professional person employed by any of them, shall have or incur any liability to any entity for any action taken or omitted to be taken in connection with or related to the formulation, preparation, dissemination, Confirmation or consummation of the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created or entered into, or any other action taken or omitted to be taken in connection with the Plan, except in the case of fraud, gross negligence, willful misconduct, malpractice, breach of fiduciary duty, criminal conduct, unauthorized use of confidential information that causes damages, or ultra vires acts.   Nothing in this Section 8.3 shall limit the liability of the Debtor's professionals pursuant to DR 6-102 of the Code of Professional Responsibility.

8.4    **Released Entities.** Upon the Effective Date, in consideration of the Cash and other property to be distributed to or on behalf of the holders of Claims and Interests under the Plan, the Plan shall be deemed to resolve all disputes and constitute a settlement and release, between and among the Debtor, on the one hand, and each Creditor and Interest Holder, on the other, from any claim or liability, whether legal, equitable, contractual, secured, unsecured, liquidated, unliquidated, disputed, undisputed, matured, unmatured, fixed or contingent, known or unknown, that the Debtor, its Creditors or Interest Holders ever had or now have through the Effective Date in connection with their Claim or Interest (including, without limitation, any claims the Debtor may assert on its own behalf or on behalf of Creditors or Interest Holders pursuant to sections 510 and 542 through 553 of the Bankruptcy Code, any claims Creditors or Interest Holders may have asserted derivatively on behalf of the Debtor absent bankruptcy, any claims based on the conduct of the Debtor's business affairs prior or subsequent to the commencement of the Case or any claims based on the negotiation, submission and confirmation of the Plan), provided however that nothing in this section 8.4 shall effect a release of any claim for any debt owed to the United States Government arising under the Internal Revenue Code; any state, city or municipality arising under any state, city or municipal tax code; any environmental laws or any criminal laws of the United States or any state, city or municipality. Nothing in the Confirmation Order or the Plan shall enjoin the United States or any state or local authority from bringing any claim, suit, action or other proceedings against the Released Entities for any claim, suit or action arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state, city or municipality. Nothing in the Confirmation Order or the Plan shall exculpate any party from any

{00483468.DOC;4 }

32

liability to the United States Government or any of its agencies or any state, city or municipality arising under the Internal Revenue Code, any state, city or municipal tax code, the environmental laws or any criminal laws of the United States or any state, city or municipality.

        8.5   **Plan and Confirmation Order as Release.**  From and after the Effective Date, a copy of the Confirmation Order and the Plan shall constitute and may be submitted as a complete defense to any claim or liability released pursuant to this article 8 of the Plan.

{00483468.DOC;4 }

# ARTICLE 9

## MISCELLANEOUS PROVISIONS

9.1 **Orders in Aid of Consummation.** Pursuant to sections 105, 1141, 1142 and 1143 of the Bankruptcy Code, the Bankruptcy Court may enter one or more Orders in aid of Confirmation directing the implementation of matters or actions required by the Plan.

9.2 **Compliance with Tax Requirements.** In connection with the Plan, the Debtor and, where applicable the Disbursing Agent, shall comply with all withholding and reporting requirements imposed by federal, state and local taxing authorities and distributions under the Plan and shall be subject to applicable withholding and reporting requirements; *providing, however,* that the transfer of any Cash, property or other interest hereunder shall not be subject to any federal, state or local tax to the fullest extent provided under section 1146 of the Bankruptcy Code.

9.3 **Due Authorization by Creditors.** Each and every Creditor who elects to participate in the distributions provided for under the Plan warrants that it is the lawful owner of such Claim and is authorized to accept the distributions provided for in the Plan and that there are no outstanding liens, encumbrances, commitments, agreements, or understandings, express or implied, that may or can in any way defeat or modify the rights released, conveyed or modified by the Plan, or obligations undertaken by such Creditor under the Plan.

9.4 **Amendments.** The Plan may be altered, amended or modified by the Debtor in writing, signed by the Debtor at any time before the substantial consummation of the Plan, as provided in sections 1101(a) and 1127 of the Bankruptcy Code and Bankruptcy Rule 3019.

{00483468.DOC;4 }

9.5    **Revocation.**  The Debtor may revoke or withdraw the Plan at any time prior to entry of the Confirmation Order.  If the Plan is revoked or withdrawn or if no Confirmation Order is entered, the Plan shall be null and void, and nothing contained in the Plan shall (i) constitute a waiver or release of any Claims by or against, or any Interest in, the Debtor; or (ii) prejudice in any manner the rights of the Debtor in any further proceedings involving the Debtor or its Estate.

9.6    **Request for Relief Under Section 1129(b).**  If the Plan is accepted by one or more, but not all impaired Classes of Creditors, the Debtor requests confirmation under section 1129(b) of the Bankruptcy Code, subject to any modification of the Plan made pursuant to section 1127 of the Bankruptcy Code, Bankruptcy Rule 3019 and section 9.4 of the Plan.

9.7    **Filing of Additional Documents.**  Except as otherwise provided in the Plan, on or before the Effective Date, the Debtor may file with the Court such agreements and other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

9.8    **Section Headings.**  The section headings contained in the Plan are for reference purposes only and shall not affect in any way the meaning or interpretation of the Plan.

9.9    **Computation of Time.**  In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) shall apply.

9.10    **Penalties.**  Unless allowed by the Court, no Distribution shall be made on account of any Administrative Claim, Priority Claim, Secured Claim or Unsecured Claim for or in satisfaction of any punitive or exemplary damages or on account of any fine, penalty or forfeiture.

9.11    **Successors and Assigns.**  The rights, benefits and obligations of any entity named or referred to in the Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such entity.

9.12    **Notices.**  All notices and other communications to be given or made hereunder shall be in writing and shall be deemed to have been given or made when mailed or as otherwise set forth herein:

(a)    if to the Debtor, to the attention of Dr. Marc Liebeskind, Park Avenue Radiologists, P.C., 525 Park Avenue, New York, New York, with a copy to Robinson Brog Leinwand Greene Genovese & Gluck P.C., 875 Third Avenue, 9th Fl., New York, NY 10022, Attn: A Mitchell Greene, Esq.; and

(b)    if to any Creditor or Interest holder at (i) the addresses set forth on the respective Proofs of Claim or Proofs of Interests Filed by such holders; (ii) the addresses set forth in any written notices of address changes delivered to the Disbursing Agent after the date of any related Proof of Claim of Proof of Interest; or (iii) the address reflected in the Schedules if no Proof of Claim or Proof of Interest is filed and the Disbursing Agent has not received a written notice of a change of address.

(c) if to an Entity that has filed a notice of appearance, at the address set forth on such notice of appearance.

9.13    **Governing Law.**  Except to the extent that the Bankruptcy Code or Bankruptcy Rules or other Federal law are applicable, and subject to the provisions of any contract, instrument, release or other agreement or document entered into in connection with the Plan, the rights and obligations arising under the Plan shall be governed by, and construed and enforced in

{00483468.DOC;4 }

36

accordance with the laws of the State of New York without giving effect to the principles of conflict of laws thereof.

9.14    **Late Claims.**  No Distribution shall be made on account of any Claims filed after the Bar Date, or any bar date contained in the Plan or order of the Court, whichever is applicable, except as specifically allowed by order of the Court after notice and opportunity for a hearing.   No Distribution shall be made on account of Administrative Claims filed after the Administrative Bar Date.

9.15    **Entire Agreement**.  Except as set forth herein, the Plan supersedes all prior discussions, understandings, agreements and documents pertaining or relating to any subject matter of the Plan.

9.16    **Other Actions.**  Nothing contained herein shall prevent the Debtor, Interest Holders or creditors from taking such actions as may be reasonably necessary to consummate the Plan, although such actions may not specifically be provided for within the Plan.

9.17    **Severability.**  In the event any provision of the Plan is determined to be unenforceable, such determination shall in no way limit or affect the enforceability and operative effect of any or all other provisions of the Plan.

9.18    **Business Day.**  In the event that the Plan requires an act to be performed on a day that is not a Business Day, such act shall be performed on the first Business Day thereafter.

# ARTICLE 10

## RETENTION OF JURISDICTION

10.1    **Retention of Jurisdiction.**  Notwithstanding the entry of the Confirmation Order or the occurrence of the Effective Date until the case is closed, the Bankruptcy Court shall retain and have original, but not exclusive, jurisdiction to:

(a)     Insure that the Plan is consummated, and to enter an Order pursuant to Section 1142(b) of the Bankruptcy Code, to compel the Debtor and any other necessary party to take such action and execute such documents to effectuate the Plan;

(b)     Allow, disallow, determine, liquidate, classify or establish the priority, secured or unsecured status of any Claim or Interest, including, without limitation, the resolution of any request for payment of any Administrative Expense and the resolution of any and all objections to the allowance or priority of Claims or Interests;

(c)      Grant or deny any and all applications for allowance of compensation or reimbursement of expenses authorized pursuant to the Bankruptcy Code or the Plan, for any period ending on or before the Effective Date;

(d)     Resolve any motions pending on the Effective Date to assume, assume and assign or reject an Executory Contract or Unexpired Lease to which the Debtor is a party or with respect to which the Debtor may be liable and to hear, determine and if necessary, liquidate, any and all Claims arising therefrom;

(e)     Ensure that distributions to holders of Allowed Claims and Allowed Interests are accomplished pursuant to the provisions of this Plan;

(f)       Decide or otherwise resolve any and all applications, motions, adversary proceedings, contested or litigated matters, and any other matters or grant or deny any applications involving the Debtor that may be pending on the Effective Date;

(g)       Enter such Orders as may be necessary or appropriate to implement or consummate the provisions of the Plan and all contracts, instruments, releases and other agreements or documents created in connection with the Plan or Disclosure Statement or to enforce all orders, judgments, injunctions, and rulings entered in connection with the Case;

(h)       Resolve any and all controversies, suits or issues that may arise in connection with the consummation, interpretation or enforcement of the Plan or any Entity's obligations incurred in connection with the Plan;

(i)        Modify the Plan before or after the Effective Date pursuant to section 1127 of the Bankruptcy Code, or to modify the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(j)       Remedy any defect or omission or reconcile any inconsistency in any Order, the Plan, the Disclosure Statement or any contract, instrument, release or other agreement or document created in connection with the Plan, to the extent authorized herein or in the Bankruptcy Code;

(k)       Issue any injunctions, enter and implement other Orders or take such other actions as may be necessary or appropriate to restrain interference by any Entity with consummation or enforcement of the Plan;

(l)       Enter and implement such Orders as are necessary or appropriate if the Confirmation Order is for any reason modified, stayed, reversed, revoked or vacated;

{00483468.DOC;4 }

(m)     Determine any dispute arising under or related to the Plan, including, without limitation, any dispute concerning the scope or effect of any release or discharge provided for by the Plan or the Confirmation Order;

(n)     Determine any other matters that may arise in connection with or relate to the Plan, the Disclosure Statement, the Confirmation Order, or any contract, instrument, release or other agreement or document created in connection with the Plan or Disclosure Statement;

(o)     Enter an Order or Final Decree concluding the Case.

10.2    **Post-Closing Jurisdiction**.  Notwithstanding the entry of a final decree or an Order closing the case, the Bankruptcy Court shall retain jurisdiction to reopen the case for the purpose of enforcing, by injunction or otherwise, the term of the Plan, the Confirmation Order and any Final Decree, including, without limitation, the enforcement of any rights of the Debtor.

# ARTICLE 11

## CONDITIONS PRECEDENT TO THE EFFECTIVE DATE

Unless the following condition is either satisfied or waived by the Debtor, the Effective Date shall not occur:

11.1    **Confirmation Order.**  The Confirmation Order shall be a Final Order.

11.2    **Closing Date**.  The closing shall occur.

# ARTICLE 12

## CLOSING THE CASE

12.1   **Substantial Consummation**.  Until the occurrence of the Effective Date and Substantial Consummation of the Plan, the Debtor, its property and its creditors shall be subject to further orders of the Bankruptcy Court.

Dated:      New York, New York
            July 22, 2010

                            MLLH Realty Corp.


                            By:  /s/ Marc Liebeskind
                                Marc Liebeskind, President

                            ROBINSON BROG LEINWAND GREENE
                            GENOVESE & GLUCK P.C.
                            Counsel to the Debtor
                            875 Third Avenue
                            New York, New York 10022

                            By: /s/ A. Mitchell Greene
                            A. Mitchell Greene