UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------X
In re:

**PARK AVENUE RADIOLOGISTS, P.C., et al**

Debtor.
-----------------------------------------------------------X

Confirmed Chapter 11
Case Nos. 09-14929 (MG)
Through 09-14931 (MG)
(Jointly Administered)

**FIRST AND FINAL APPLICATION OF ROBINSON BROG LEINWAND GREENE
GENOVESE GLUCK P.C., ATTORNEYS FOR THE DEBTORS-IN POSSESSION,
FOR AN AWARD OF COMPENSATION AND REIMBURSEMENT OF EXPENSES**

**TO THE HONORABLE MARTIN GLENN
UNITED STATES BANKRUPTCY JUDGE:**

Robinson Brog Leinwand Greene Genovese & Gluck P.C., ("Applicant" or "RB"),

attorneys for Park Avenue Radiologists, P.C., ("Park") Imaging Services Company of NY,

LLC ("Imaging") and MLLH Realty Corp., ("MLLH" and collectively, with Park and

Imaging, the "Debtors"), as and for its first and final application for an award of fees and

reimbursement of expenses ("Application"), pursuant to sections 330(a) and 331 of title 11 of

the United States Code ("Bankruptcy Code"), and Rule 2016 of the Federal Rules of

Bankruptcy Procedure (the "Bankruptcy Rules"), respectfully represents:

**PRELIMINARY STATEMENT**

1.   This Application is made pursuant to the Bankruptcy Code for its first and final

allowance of compensation for professional services and reimbursement of expenditures

necessarily incurred by Applicant in its representation of the Debtors during these chapter 11

cases for the period extending from August 3, 2009 through August 26, 2010 (the

"Application Period"), for fees in the aggregate amount of $628,417.00[1] and for disbursements in the aggregate amount of $12,421.04[2].

2. The Debtors are an affiliated group of businesses whose cases were jointly administered pursuant to an order entered on September 30, 2009.

3. Park, a professional corporation maintaining its principal place of business at 525 Park Avenue, New York, New York, is the owner and operator of a radiology imaging center. Park employs the physicians and technicians who render medical treatment. Park's owners as of the Petition Date were Dr. Albert Messina and Dr. Marc Liebeskind.

4. Imaging, a limited liability company maintaining its principal place of business at 525 Park Avenue, New York, New York, manages Park's radiology imaging center. Imaging employs the administrative and clerical employees who manage and operate the non-medical aspects of Park's business, including providing technical and operational support such as equipment procurement and maintenance. As of the Petition Date, Imaging's owners were Dr. Albert Messina and Kitchen Table LLC, whose only member was Dr. Marc Liebeskind. Imaging only provides services to Park and Imaging only receives revenue from Park.

5. MLLH, a corporation maintaining its principal place of business at 525 Park Avenue, New York, New York, owns the real property consisting of two (2) floors located at 525 Park Avenue, New York, New York, from where Park and Imaging operate their businesses. As of the Petition Date, MLLH was owned by Dr. Albert Messina, Dr. Marc Liebeskind, Dr. Gary Halpern, the Estate of Doreen Liebeskind and the Estate of Arie Liebeskind.

6. Prior to the commencement of the Debtors' cases, the survival of the Debtors' businesses was far from certain. As a result of a protracted and expensive arbitration which

---

[1] Fees for Park = $389,088.00, Fees for Imaging = $69,231.50, Fees for MLLH = $170,097.50.
[2] Disbursements for Park = $10,297.98, Disbursements for Imaging = $1,062.83, Disbursements for MLLH = $1,060.23.

{00499041.DOC;2 }

was precipitated by an acrimonious shareholder dispute, the Debtors' radiology practice was in serious jeopardy. The entry of an arbitration award directing the Debtors to redeem various of the shares held by the Debtors' shareholders required that a closing to redeem the shares proceed within a brief period of time. The source of funding for the redemption of shares was intended to be through the refinance of the mortgage on the real property owned by MLLH. The Debtors however were unable to close on the refinancing within the required period of time. As they were unable to comply with the terms of the arbitration award, on August 11, 2009 (the Petition Date") the Debtors each filed their voluntary petitions for reorganization under chapter 11 of the Bankruptcy Code.

7. Through RB's efforts, on August 26, 2010, less than thirteen months after filing for bankruptcy protection, this Court entered an order confirming each of the Debtors plans of reorganization.

8. RB fulfilled its role in as expeditious and efficient a manner as possible in order to minimize costs to the Estates. Throughout this process, RB relied on a core team of skilled bankruptcy lawyers, as well as talented litigators with extensive bankruptcy court experience who accounted for the majority of the time expended on these cases during the Application Period. The core team was supplemented by tax, finance, and corporate specialists, as needed. In total, 13 RB attorneys, and 4 paraprofessionals have been engaged in this case at some point during the Application Period.

9. In light of the complexity and scale of these cases, and the significant results achieved, Applicant submits that its fees for professional services and expenses are reasonable under applicable standards and requests the Court grant the Application and allow compensation for professional services and reimbursement of expenses incurred during the

Application Period.

## JURISDICTION

10. This Court has jurisdiction of this Application pursuant to 28 U.S.C Sections 157 and 1334 and the Standing Order of Referral of Cases to Bankruptcy Judges of the United States District Court for the Southern District of New York, dated July 10, 1984 (Ward, Acting C.J.). Venue in this district is proper pursuant to 28 U.S.C. Sections 1408 and 1409. The statutory predicates for the relief sought herein are sections 330 and 331 of the Bankruptcy Code, as complemented by Rule 2014 of the Bankruptcy Rules.

## SUMMARY OF PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES REQUESTED

11. This Application has been prepared in accordance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, adopted by the Court on November 25, 2009 (the "Local Guidelines"), And The United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, dated January 30, 1996 (the "UST Guidelines" and together with the Local Guidelines the "Guidelines"). Pursuant to the Local Guidelines, a certification regarding compliance with the same is annexed hereto as Exhibit A. Pursuant to the UST Guidelines the Debtors are being provided with a copy of this Application and the accompanying exhibits.

12. Applicant seeks a total fee award of $628,417.00 for professional services rendered and $12,421.04 in disbursements necessarily incurred in the representation of the Debtors during the Application Period for a total award of $640,838.04. During the Application Period, RB attorneys and paraprofessionals expended a total of 1,643 hours for which compensation is sought.

13. Prior to Petition Date, Applicant received the aggregate amount of $53,117 from the Debtors, representing a retainer payment of $50,000 and the $1,039 filing fee for each of the Debtors cases.

14. Members and associates of Applicant have been duly admitted to practice in the Courts of the State of New York, as well as the United States District Court for the Eastern and Southern Districts of New York.

15. All of the services for which Applicant seeks compensation herein have been rendered on behalf of the Debtors.

16. Applicant has made no prior application for compensation or reimbursement of disbursements incurred.

17. Pursuant to an order entered on November 2, 2009, Applicant was authorized to act as counsel to the Debtors.

18. The fees charged by Applicant in these cases were in accordance with its existing billing rates and procedures in effect during the Application Period. The rates RB charged for the services rendered by its professionals and paraprofessional in these chapter 11 cases are the same rates RB charges for professional and paraprofessional services rendered in comparable non bankruptcy related matters. Such fees are reasonable based on the customary compensation charged by comparably skilled practitioners in comparable non-bankruptcy cases in a competitive national legal market.

19. Pursuant to the UST Guidelines, annexed hereto as <u>Exhibit B</u> is a schedule setting forth all RB professionals and paraprofessionals who have performed services in this chapter 11 case during the Application Period, the capacities in which each individual is employed by RB, the hourly billing rate charged by RB for services performed by such individual (or if

the applicable rate has changed over the course of the Chapter 11 cases, the schedule lists a blended rate for that individual), the year in which each professional was first licensed to practice law and the aggregate number of hours expended in this matter and fees billed therefore. The total fee request aggregates $628,417.00 for a combined blended rate per hour of approximately $382.48 for services rendered during the Application Period for all persons at RB and a blended rate per hour of approximately $399.97 for services rendered by attorneys at RB.

20. Applicant maintains contemporaneous records of the time expended for the professional services performed and expenses incurred in connection with its representation of the Debtors in these chapter 11 cases and such records provide a detailed description of the services rendered and disbursements made on the Debtors' behalf during the Application Period. In support of this Application, pursuant to Section II.D of the UST Guidelines, Applicant has annexed as Exhibit C, a computer printout of these records reflecting the actual time and hours recorded during the Application Period organized in consecutive order by date within twelve (12) specific project billing subsections: (1) Business Operations; (2) Case Administration; (3) Claims Administration and Objections; (4) Fee/Employment Applications; (5) Financing; (6) Litigation; (7) Meeting of Creditors/Status Hearings; (8) Plan and Disclosure Statement; (9) Relief from Stay Proceedings; (10) Asset Analysis and Recovery; (11) Case Preparation and (12) Dismissal, Venue, Abstention and Withdrawal. These time records reflect that during the Application Period, RB expended 1,643 hours of billable time in performing services for the Debtors. The time records detail the amount of time expended by each individual in representing the Debtors during the Application Period, the nature of the services performed and the date of such services.

21.  Applicant regularly maintains records detailing expenses incurred in connection with the rendering of legal services.  Annexed hereto as <u>Exhibit D</u>  is a schedule prepared from Applicant's office records setting forth the expenses necessarily incurred in connection with services rendered to the Debtors during the Application Period.  Expenses aggregate the sum of $12,421.04.

22. Accordingly, during the Application Period, RB has expended 1,643 hours of billable time in these cases aggregating a total fee request of $640,838.04 for which Applicant is seeking approval of $628,417.00 in fees for time expended on the Debtors' cases and reimbursement of $12,421.04 for actual out-of-pocket expenses.

23. Applicant submits its work as Debtors' counsel has been substantial and that the professional services rendered by Applicant significantly and materially contributed to these Chapter 11 Cases and the Debtors successful reorganizations.

## OVERVIEW OF SERVICES PROVIDED TO THE DEBTORS DURING THE APPLICATION PERIOD

24. As this Court is aware, the precipitating cause of the Debtors' bankruptcy filings was an arbitration award issued on February 6, 2009 which arbitration award, and an order clarifying arbitration award were confirmed and judgment entered pursuant to an order of Justice Louis B. York in the Supreme Court of the State of New York, County of New York on June 3, 2009.  The order authorized, amongst other things, the redemption of the equity interests held by Marc Liebeskind ("Liebeskind") and the Estate of Doreen Liebeskind in Park, MLLH and Imaging and the redemption of the Estate of Arie Liebeskind's interest in MLLH. The judgment further directed the closing for the redemption of shares was to take place on July 6, 2009.  However, the Debtors were unable to comply with the terms of the arbitration award and judgment as they were unable to close on a financing arrangement,

resulting in the each of the Debtors filing their voluntary chapter 11 bankruptcy cases on August 11, 2009.

25. The decision to file was immediate and Applicant on an emergency basis prepared the petitions and a "first day" motion seeking authority to pay pre-petition wage obligations to the Debtors' employees. A hearing on the wage motion was held just subsequent to the Petition Date. Thereafter, Applicant prepared additional administrative motions including a joint administration motion for the Debtors' cases, various retention applications for Applicant, special corporate and litigation counsel and accountants for the Debtors, and a motion for the maintenance of existing bank accounts. Applicant also spent substantial time meeting with Debtors' administrative staff and reviewing the Debtors' books and records, equipment leases and the arbitration award in order to prepare the appropriate schedules and statements of financial affairs as required pursuant to the Bankruptcy Code.

26. As a result of the underlying shareholder dispute, the Debtors' cases were met almost immediately with opposition. On September 18, 2009, the Estate of Doreen Liebeskind and the Estate of Arie Liebeskind (the "Estates") filed their motion to convert, dismiss or appoint a chapter 11 trustee in the MLLH case. On September 25, 2009, Liebeskind filed his motion seeking the appointment of a chapter 11 trustee in the Debtors' cases. Thereafter on October 30, 2009, the Estates filed their joinder to Liebeskind's motion to appoint a chapter 11 trustee in the Debtors' cases. As will be more fully set forth herein, Applicant spent substantial time negotiating with counsel to the various shareholders in an effort to resolve their disputes and move towards obtaining financing sufficient to fund a plan of reorganization. However, initial settlement negotiations were not successful and nearly all matters in the Debtors' cases became contested. The Estates opposed the retention applications submitted on behalf of

Morgenthau & Greenes, LLP as special corporate counsel and Zukerman Gore & Brandeis as special litigation counsel to the Debtors, joined in Liebeskind's objection to the retention of Berdon LLP as accountants to the Debtors and Liebeskind's motion to appoint a chapter 11 trustee, and objected to the Debtors' exclusivity motion. Liebeskind interposed objections to the retentions of Morgenthau & Greenes, LLP as special corporate counsel and Berdon LLP as accountants to the Debtors. Dr. Gary Halpern ("Halpern"), an MLLH shareholder objected to the retention of Morgenthau & Greenes, LLP as special counsel and Zukerman Gore & Brandeis as special litigation counsel to the Debtors. Despite the contested nature of even the most basic of matters, Applicant sought to facilitate a resolution of each contested matter while pursuing a global resolution of the shareholder dispute. As such, Applicant communicated often with all parties in an attempt to globally resolve the shareholder dispute within the context of the bankruptcy cases and was eventually successful in resolving the various retention and other objections through the negotiation of settlements between and among Liebeskind, Halpern, the Estates, Dr. Albert Messina ("Messina") and the Debtors.

27. Applicant appeared at the Initial Debtor Interview and 341 meeting of creditors and worked with Messina, the then principal of the Debtors, and his staff to prepare the schedules. Applicant also worked closely with Debtors' accountants and corporate counsel, and as set forth above, sought their retention, which applications were met with opposition. Eventually, in connection with the Messina settlement more fully set forth and defined herein, Applicant was successful in obtaining bankruptcy court approval of the retention of the various professionals effective as of the Petition Date.

28. In accordance with the requirements of section 521 of the Bankruptcy Code and Bankruptcy Rule 1007, the Debtors filed their schedules of assets and liabilities, including

schedules of all of known creditors and the amounts and priorities of the claims the Debtors

believe are owed to such creditors, which schedules were subsequently amended. Applicant

also prepared the appropriate bar date application and served the appropriate bar date notice

once the Court set February 9, 2010 as the last date for filing Proofs of Claim and Proofs of

Interest filed against the Debtors' estates.

29. Pursuant to the requirements of the Office of the United States Trustee for the

Southern District of New York, the Debtors were required to submit monthly financial

reports with the Bankruptcy Court detailing the results of the Debtors' ongoing business

operations. Applicant worked with Debtors' accountants and bookkeeper with respect to the

preparation of the operating reports. Applicant also communicated with the US Trustee's

office to review the information contained in the reports and reconcile the amount of fees due

the Office of the US Trustee.

30. A review of the docket sheet in these cases reflects a number of stipulations

modifying the automatic stay in order for litigation to proceed in other courts. Subsequent to

the Petition Date, Applicant was contacted by, and communicated often with, various counsel

in pending medical malpractice proceedings naming some or all of the Debtors as defendants

and drafted where appropriate, stipulations modifying the automatic stay so that these

litigations could proceed as against available insurance proceeds, if any.

31. As it was apparent that the Debtors would not be in a position to file a feasible plan of

reorganization within the first 180 days of the Petition Date, Applicant prepared a motion

extending the Debtors' exclusive right to file a plan and solicit acceptances with respect

thereto which motion was granted pursuant to a bridge order entered on April 21, 2010. A

second exclusivity motion was prepared subsequent to the approval of the Messina

Settlement, but prior to the approval of the Halpern Settlement, which motion was granted pursuant to an order entered on May 26, 2010.

32. The Debtors were struggling timely satisfying their post petition lease payments. Siemens Medical Systems, Siemens Financial Services and Key Equipment Finance each leased various pieces of equipment to the Debtors which the Debtors utilized in their radiology practice and each lessor filed a motion seeking payment of administrative expense when the Debtors fell behind in their obligations. Applicant worked with counsel to Siemens and Key and was able to successfully renegotiate the equipment leases and their payment terms so that the Debtors would be able to maintain the leases, which were necessary for the continuation of the radiology practice, while still being in a position to manage the prospective lease payments. This Court approved each of the stipulations, which were also a key component of the confirmed plans of reorganization of Park and Imaging.

33. Similarly, Applicant worked with counsel to the Debtors' billing company, Medical Specialties Managers, Inc. ("MSM"), to negotiate a resolution of its motion seeking, amongst other relief, relief from the automatic stay, compelling assumption or rejection of the subject agreement and providing adequate protection payments. Like the equipment leases, the billing services provided by MSM, were also of vital importance to the Debtors' operations and the MSM contract had to be preserved in order for the Debtors to continue to timely recover their accounts receivable and operate their businesses. After a lengthy drafting and negotiation process, the parties entered into a stipulation resolving the MSM motion, and fixing its claim, which stipulation was approved by this Court on April 15, 2010.

34. On March 30, 2010, Applicant filed a Bankruptcy Rule 9019 motion with respect to the aforementioned Messina settlement agreement (the "Messina Settlement"), which motion

was the linchpin for the eventual successful reorganization of the Debtors. As this Court is aware, the negotiations underlying the eventual settlement were extraordinarily time consuming and detailed, and required substantial drafting and reviewing of the eventual settlement documents. At the Petition Date, Messina was the only active shareholder/member of the Debtors. The Messina Settlement resolved a more than three year dispute between Messina and Liebeskind, the last remaining equity holders of the Park and Imaging radiology practices which dispute was the precipitating cause for the Debtors' bankruptcy filings. The Messina Settlement provided for Liebeskind to acquire Messina's equity interest in the Debtors, whether by purchasing Messina's equity interests in the Debtors or through a redemption of Messina's interests by the Debtors pursuant to a plan of reorganization, authorized Liebeskind's return to the practice and his assumption of all operational control of the Debtors. This was a significant change in the Debtors' management and day to day operations. The negotiations between Liebeskind, Messina and the Debtors broke down on several occasions, and at the end of 2009, it appeared that the Liebeskind motion to appoint a chapter 11 trustee and the Estates motion to convert or dismiss the MLLH case would proceed towards an evidentiary hearing. Applicant worked on dual tracks at this juncture, preparing its opposition to the trustee and conversion/dismissal motions, while still actively engaged in and pursuing settlement opportunities. Eventually, the Messina settlement terms were agreed upon, the documents finalized and executed at a closing held on March 12, 2010, and pursuant to an order entered on April 21, 2010, the Court approved the Messina Settlement. In connection with the Messina Settlement, the Estates and Liebeskind formally withdrew their pending motions, joinders and objections filed in the Debtors' cases.

35. Certainly the global resolution of the shareholder dispute was necessary for the Debtors to successfully emerge from chapter 11; however, other matters also required Applicant's time and attention in proposing a feasible plan of reorganization. Applicant regularly reviewed the claims filed in the Debtors' cases and noted the significant tax claims asserted against the Estates. Applicant worked with the Debtors' representatives and their accountants to analyze the claims which resulted in the filing of a motion objecting to claims filed by the Internal Revenue Service, New York State Department of Finance and the New York City Department of Taxation and Finance. In working towards resolving the tax claim objection, Debtors received a request for documents from the New York City Department of Taxation and Finance. Applicant worked with the representative from the City, and with Debtors' accountants, to provide a prompt response to the document request and on June 29, 2010, the City of New York Department of Finance withdrew the proofs of claim filed against Park in the amount of $176,550.00, Imaging in the amount of $1,159,663.00 and MLLH in the amount of $5,265.00. Similarly Applicant reached out to counsel to New York State, who consented to the relief requested in the motion and signed on to a consent order reducing and /or expunging the various claims filed by New York State against the Debtors' estates, including expunging the claim filed against Imaging in the amount of $3,339,323.35, which order was entered on October 12, 2010.

36. Once the Messina Settlement was completed, the focus shifted to reaching a settlement with Halpern related to his interest in MLLH (the "Halpern Settlement"). Applicant prepared another Bankruptcy Rule 9019 motion seeking approval of the Halpern Settlement which settlement was approved pursuant to an order entered on May 26, 2010. Pursuant to the Halpern Settlement, at a closing held on or about October 1, 2010, MLLH

redeemed Halperns's MLLH shares and Halpern released his $600,000 claim for retirement benefits filed against Park's Estate. The success of the Messina and Halpern settlements paved the way for the Debtors to propose their plans and to emerge from bankruptcy.

37. Once the Messina and Halpern Settlements were approved, RB's attorneys focused a great deal of their time on negotiating and crafting the Debtors' plans of reorganization and the accompanying disclosure statements and obtaining exit financing for the Debtors' emergence from chapter 11. Attorneys from various departments within RB coordinated their efforts to resolve various matters related to the plan, including tax and corporate issues. RB consulted with the Debtors and their other professional advisors to address topics including projections, receivable financing, asset valuation and claims review and analysis. On June 24, 2010, the Debtors filed their plans of reorganization and disclosure statements as well as a motion seeking approval of the disclosure statements. Amended plans and disclosure statements were subsequently filed on July 21, 2010 and July 23 2010 and an order approving the disclosure statements as amended and modified and setting deadlines for solicitation and a hearing on confirmation was entered on July 23, 2010. Applicant proceeded to solicit acceptances and/or rejections of the plans and commenced working towards what would be the successful confirmation of the plans. On August 26, 2010, the Bankruptcy Court entered an order confirming the Debtors' plans.

38. Applicant's services were required on a regular basis in representing the Debtors. This Application delineates the general areas of services performed for and on behalf of the Debtors during the Application Period. In addition, this Application summarizes and highlights the more significant matters addressed by Applicant in its representation of the Debtors. However it would be impossible to fully detail all of the services performed by

Applicant during the Application Period. A review of the detailed billing records attached contain a complete and thorough analysis of the time spent by Applicant in representing the Debtors and illustrates that Applicant devoted substantial time and effort to the Debtors' cases and their successful reorganization.

39. The professional services performed by RB were necessary and appropriate to the administration and prosecution of the Debtors' chapter 11 cases and were in the best interests of the Debtors and other parties in interest. Compensation for such services, as described above, is commensurate with the complexity, importance, and nature of the problems, issues, and tasks involved.

40. RB efficiently managed and dispatched its services in these cases. The cases were staffed with a core team of attorneys (partners, counsel and associates) and paraprofessionals. During the Application Period, RB, on behalf of the Debtors, expended an aggregate of 1,643 hours in professional services. Of this aggregate time, 1,459.4 recorded hours were expended by partners and counsel; 48.7 recorded hours were expended by associates; and 134.90 recorded hours were expended by paraprofessionals.

41. As noted, attached hereto as Exhibit B is a schedule listing each RB professional and paraprofessional who performed services during the Application Period for which compensation is sought, the hourly rate charged by RB for services performed by each such individual, and the aggregate number of hours and charges by each such individual.

## ACTUAL AND NECESSARY DISBURSEMENTS

42. As set forth in Exhibit D hereto, RB requests allowance of reimbursement of $12,421.04 in the aggregate that it has disbursed as actual and necessary expenses reasonably incurred in providing professional services during the Application Period.

## THE REQUESTED COMPENSATION SHOULD BE ALLOWED

43. Section 330 of the Bankruptcy provides that a court may award a professional employed under section 327 of the Bankruptcy Code "reasonable compensation for actual necessary services rendered . . . and reimbursement for actual, necessary expenses." 11 U.S.C. § 330(a)(1)(A) and (B). Section 330 also sets forth the criteria for the award of such compensation and reimbursement:

> In determining the amount of reasonable compensation to be awarded . . .the court shall consider the nature, the extent, and the value of such services, taking into account all relevant factors, including—
> (A)    the time spent on such services;
>
> (B) the rates charged for such services;
>
> (C) whether the services were necessary to the administration of, or beneficial at the time at which the service was rendered toward the completion of, a case under this title;
>
> (D) whether the services were performed within a reasonable amount of time commensurate with the complexity, importance and nature of the problem, issue, or task addressed;
>
> (E) with respect to a professional person, whether the person is board certified or otherwise has demonstrated skill and experience in the bankruptcy field; and
>
> (F) whether the compensation is reasonable based on the customary compensation charged by comparably skilled practitioners in cases other than cases under this title.
> Id. § 330(a)(3).

44. In determining the reasonableness of a compensation request, courts generally apply the lodestar method. Boddy v. United States Bankruptcy Court (In re Boddy), 950 F.2d 334, 337 (6th Cir. 1991) ("The Supreme Court has made it clear that the lodestar method of fee calculation is the method by which federal courts should determine reasonable attorney's fees under federal statutes that provide for such fees."); see also Shaw, Licitra, Parente, Esernio & Schwartz, P.Z. v. Travelers Indemnity Co. (In re Grant Associates), 154 B.R. 836, 843 (S.D.N.Y. 1993) (noting that the lodestar standard had been adopted by most courts calculating fees under section 330(a), and that "[g]iven the similarity in context and language between the two statutes, the same standard should apply" to fees under section 506(c)); In re Drexel Burnham Lambert Group, Inc., 133 B.R. 13, 21-22 (Bankr. S.D.N.Y. 1991). Courts calculate the lodestar amount by multiplying the number of hours reasonably expended by the attorney's reasonable hourly rate. See Drexel, 133 B.R. at 22 (citing Pennsylvania v. Delaware Valley Citizens' Council for Clean Air, 478 U.S. 546, 565 (1986)). In assessing the reasonableness of a compensation request, there is a "strong presumption" that an attorney is entitled to the lodestar fee. Id.

45. Applicant respectfully submits that the reasonable value of the services rendered during the Application Period, which are described herein, and which are set forth on Exhibit C annexed hereto, is the sum of **$628,417.00** together with reimbursement of actual and necessary disbursements in the amount of **$12,421.04.** The perspective from which an application for allowance of compensation should be viewed in a Bankruptcy Case was aptly stated by The Honorable Don Edward, Member of Congress, on the Floor of the House of Representatives, on September 28, 1978. The following statement was made in relation to Section 330 of Title 11 of the Code:

"(Attorneys') fees in Bankruptcy Cases can be quite large and
should be closely examined by the Court. However,
Bankruptcy legal services are entitled to command the same
competency of counsel as other cases. In that light, the policy
of this Section is to compensate attorneys and other
professionals serving in a case under Title 11 at the same rate
as the attorney or other comparable service other than in a case
under Title 11. Contrary language in the Senate Report S.2266
is rejected, and Massachusetts Mutual Life Insurance Co. v.
Brock, 305 F.2d 429, 432 (5th Cir. 1968) is overruled.
Notations of economy of the Estate and fixing fees are outdated
and have no place in a Bankruptcy Code." 124 Cong. Rec.
H11089 (Daily Ed. Sept. 28, 1978).

46. Applicant is cognizant of the numerous factors to be considered by the Court in
making its determination of allowances of compensation. The time and labor devoted to the
representation of the Debtors in these Chapter 11 cases is only one of the pertinent factors.
Additional relevant considerations include:

(a) The novelty and difficulty of the questions involved;

(b) The size of the Estate;

(c) The opposition encountered;

(d) The results obtained;

(e) The requisite legal skill required;

(f) The preclusion of other employment;

(g) Customary Fee;

(h) The experience, reputation and ability of the attorney;

(i) The undesirability of the case;

(j) The nature of length of the professional relationship with the client;

(k) The awards in similar cases; and

(l) The contingent nature of the fee.

In re: First Colonial Corp. of America, 544 F.2d 1291, 1299 (5th Cir. 1977); Cle-Ware, Inc. v. Sokolsky, 493 F.2d 863, 869 (6th Cir. 1974); In re: Mabson Lumber Company, 394 F.2d 23, 25 (2nd Cir. 1968); In re: Paramount Merrick, Inc., 252 F.2d 482, 485 (2nd Cir. 1958).

47.  As stated in this application, the professional services rendered by Applicant have required the expenditure of substantial time and effort.  During the Application Period, 1,643 of recorded hours have been expended by Members, Associates and Paraprofessionals of Applicant's firm in the rendition of the requested professional services.  Applicant's rates for its services to the Debtors compares favorably with other professionals in this area.

48.  In reviewing the above-cited factors, it should be noted that almost every category cited by the foregoing authorities militates in favor of the award requested.

49.  RB respectfully submits that the services for which it seeks allowance of compensation were necessary for and beneficial to the Debtors' rehabilitation and reorganization efforts, and that the requested fees and charges are reasonable in light of the magnitude and complexity of the Debtors' chapter 11 cases and the nature, extent, and value of RB's services and expenses to the Debtors, the estates and all parties in interest. The professional services that RB rendered achieved an efficient and cost-effective reorganization of the Reorganized Debtors' businesses, while maximizing the value of the Debtors' estates for the benefits of its creditors. Accordingly, final approval of the compensation sought herein is warranted.

**WHEREFORE,** RB respectfully requests (i) an allowance of compensation for professional services rendered during the Application Period in the amount of $640,838.04 which consists of $628,417.00, representing 100% of the fees incurred during the Application Period, and reimbursement of $12,421.04, representing 100% of the actual and necessary expenses RB

incurred during the Application Period; and (ii) such other and further relief as is just.

Dated: New York, New York
      November 5, 2010

                              **ROBINSON BROG LEINWAND**
                              **GREENE GENOVESE & GLUCK P.C.**
                              **Attorneys for the Debtors**
                              875 Third Avenue
                              New York, New York 10022
                              Tel. No.: 212-603-6300

                 **By:** _____
                              **Robert R. Leinwand**

# EXHIBIT A

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------X
In re:

**PARK AVENUE RADIOLOGISTS, P.C.**

      Debtor.

---------------------------------------------------------X

Confirmed Chapter 11
Case Nos. 09-14929 (MG)
Through 09-14931 (MG)
(Jointly Administered)

### CERTIFICATION UNDER GUIDELINES FOR FEES AND DISBURSEMENTS FOR PROFESSIONALS IN RESPECT OF APPLICATION OF ROBINSON BROG LEINWAND GREENE GENOVESE & GLUCK P.C. FOR PROFESSIONAL COMPENSATION AND REIMBURSEMENT OF EXPENSES

I Robert R. Leinwand, hereby certify that:

1. I am a shareholder in the applicant firm, Robinson Brog Leinwand Greene Genovese & Gluck P.C. ("RB"), with responsibility, in connection with the case of Park Avenue Radiologists P.C. (the "Reorganized Debtor") for compliance with the Amended Guidelines for Fees and Disbursements for Professionals in Southern District of New York Bankruptcy Cases, adopted by the Court on November 25, 2009 (the "Local Guidelines"), the United States Trustee Guidelines for Reviewing Applications for Compensation and Reimbursement of Expenses Filed Under 11 U.S.C. § 330, dated January 30, 1996 (the "UST Guidelines" together with the Local Guidelines, the "Guidelines").

2. This certification is made in respect of RB's application, dated November 8, 2010 (the "Application"), for (i) allowance of compensation and reimbursement of expenses for the period from August 3, 2009 through and including August 26, 2010 (the "Application Period") in accordance with the Guidelines and (ii) final approval of compensation and reimbursement of expenses for the Application Period.

3.  In respect of section B.1 of the Local Guidelines, I certify that:

    a.  I have read the Application;

    b.  to the best of my knowledge, information, and belief formed after reasonable inquiry, the fees and disbursements sought fall within the Local Guidelines;

    c.  the fees and disbursements sought are billed at rates in accordance with those customarily charged by RB and generally accepted by RB's clients; and

    d.  in providing a reimbursable service, RB does not make a profit on that service, whether the service is performed by RB in-house or through a third party.

4.  In respect of section B.3 of the Local Guidelines, I certify that the Debtors and the Office of the United States Trustee are each being provided with a copy of the Application at least 14 days before the date set by this Court for the hearing on the Fee Applications.

Dated:  New York, New York
        November 8, 2010

By: _____
    **Robert R. Leinwand**